Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| GOBIERNO DE PUERTO RICO <br><br> Parte Apelada <br><br> v. <br><br> ELIZABETH TORRES RODRÍGUEZ, en su capacidad oficial como delegada especial en la Delegación Congresional de Puerto Rico a la Cámara de Representantes del Congreso de los Estados Unidos de América <br><br> Parte Apelante | KLAN202300691 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan <br><br> Civil núm.: SJ2022CV02578 <br><br> Sobre: Destitución Delegada Especial Congresional Arts. 8 y 12, Ley Núm. 167-2020 |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, la Juez Lebrón Nieves y el Juez Rodríguez Flores

Rodríguez Flores, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 30 de octubre de 2023.

Comparece ante nos, la señora Elizabeth Torres Rodríguez (en adelante Torres Rodríguez) mediante recurso de *Apelación* y solicita la revocación de la *Sentencia* emitida el 26 de junio de 2023, y notificada en igual fecha por el Tribunal de Primera Instancia, Sala Superior de San Juan.  En lo pertinente, el foro de primera instancia declaró *Ha Lugar* la Moción de Sentencia Sumaria presentada por el Gobierno de Puerto Rico y, consecuentemente, la señora Torres Rodríguez quedó destituida como Delegada Especial o Delegada Congresional de Puerto Rico, en la Cámara de Representantes del Congreso de los Estados Unidos, ante su incumplimiento con el Artículo 12 de la Ley Núm. 167 de 30 de noviembre de 2020[1] (Ley Núm.167-2020).

---

[1] 16 LPRA sec. 985 et seq., mejor conocida como la "Ley para Crear la Delegación Congresional de Puerto Rico".

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, confirmamos el dictamen recurrido por los siguientes fundamentos.

## I.

El 3 de noviembre de 2020, se efectuaron las elecciones generales, en las cuales se llevó a cabo un plebiscito sobre el estatus político de Puerto Rico. Al resultar favorecida la opción de la estadidad, la Asamblea Legislativa aprobó una serie de medidas legislativas con el fin de promover el resultado obtenido en dicho plebiscito. Entre ellas, se aprobó la Ley Núm. 167-2020, *supra*, con el propósito de realizar una elección especial, la cual estuvo abierta a todos los electores hábiles de Puerto Rico, con la intención de seleccionar a dos delegados especiales al Senado de los Estados Unidos, y cuatro delegados especiales a la Cámara de Representantes de los Estados Unidos. Estos delegados tienen la función principal de exigir al Congreso la admisión de Puerto Rico como estado de los Estados Unidos, de conformidad con el resultado obtenido en el plebiscito del 2020.

A tenor, el 16 de mayo de 2021, se efectuó la aludida elección especial para crear la Delegación Congresional de Puerto Rico. La señora Torres Rodríguez resultó electa delegada a la Cámara de Representantes del Congreso de los Estados Unidos. El 1 de julio de 2021, esta juramentó al cargo, obligándose así, a cumplir con los deberes y responsabilidades del mismo, según dispone la ley.

El 4 de abril de 2022, el Gobierno de Puerto Rico (Gobierno), representado por el Secretario de Justicia, presentó ante el Tribunal de Primera Instancia (TPI) un *Recurso Especial de Destitución de Delegada Congresional* contra la señora Torres Rodríguez, al amparo de los Artículos 8 y 12 de la Ley Núm. 167-2020[2], *supra*, con el

---

[2] 16 LPRA sec. 985g y 985k.

propósito de destituir a la señora Torres Rodríguez de su cargo como delegada especial. En síntesis, el Gobierno afirmó que, desde su juramentación, la señora Torres Rodríguez ha incumplido con los deberes de su cargo, pues no ha realizado actos afirmativos ni esfuerzos para exigir al Congreso federal que se respete y haga valer el resultado del Plebiscito del año 2020 y se admita a Puerto Rico como un estado de los Estados Unidos. El Gobierno arguyó que las actuaciones y manifestaciones de la señora Torres Rodríguez, así como lo expuesto en sus tres informes, demuestran un craso incumplimiento con sus deberes y funciones según delimitadas por la Ley Núm. 167-2020, *supra*.

El 8 de abril de 2022, la señora Torres Rodríguez presentó *Moción Solicitando Desestimación de Recurso Especial*. En lo pertinente, esbozó que el Gobierno pretende que los tribunales pasen juicio sobre los actos o gestiones políticas que ésta ha efectuado, con el fin de alcanzar la estadidad para Puerto Rico. Adujo que, dicha determinación no correspondía a los tribunales, por tratarse de una cuestión política que conlleva la abstención judicial. Presentada la correspondiente oposición por el Gobierno, el 29 de abril de 2022, el TPI emitió una *Sentencia* declarando *Ha Lugar* la desestimación solicitada por la señora Torres Rodríguez.

Inconforme, el 27 de mayo de 2022, el Gobierno, a través de la Oficina del Procurador General, presentó un recurso de Apelación ante este foro intermedio (KLAN202200406). Luego de los trámites de rigor, que resulta innecesario pormenorizar, el 21 de junio de 2022 dictamos una *Sentencia* revocando al foro primario. Resolvimos que la controversia presentada era una justiciable, puesto que no presentaba una cuestión política. En desacuerdo con nuestra determinación, la señora Torres Rodríguez presentó un recurso de *Certiorari* ante el Tribunal Supremo de Puerto Rico, el cual fue denegado mediante *Resolución* de 4 de noviembre de 2022.

Ante la denegación del Alto Foro, los lineamientos de nuestro dictamen eran los que regían a las partes y al TPI, al momento de entender en la controversia.

Así las cosas, el 4 de mayo de 2023, la señora Torres Rodríguez presentó ante el TPI una *Moción Solicitando la Desestimación por Violación a la Separación de Poderes y Vaguedad del Estatuto*. En síntesis, planteó los mismos asuntos discutidos y resueltos por este foro apelativo el pasado 21 de junio de 2022[3]. Al día siguiente, 5 de mayo de 2023, el Gobierno presentó una "Moción de Sentencia Sumaria". En la moción dispositiva, el Gobierno circunscribió como asunto litigioso a determinar si la señora Torres Rodríguez había cumplido con los deberes de su cargo al momento de ser presentada la petición de destitución.

En la solicitud de sentencia sumaria, el Gobierno propuso dieciséis (16) hechos esenciales sobre los cuales adujo que no existía controversia, que transcribimos a continuación:

> 1. La señora Torres Rodríguez participó como candidata a delegada congresional en la elección especial celebrada el 16 de mayo de 2021, específicamente, como candidata a delegada especial en la Cámara de Representantes del Congreso de los Estados Unidos y resultó electa. Véase 16 LPRA §§ 985c y 985d; véase, además, ANEJO II, Entrada Núm. 1 de SUMAC-Certificación de la Comisión Estatal de Elecciones sobre resultado final del Escrutinio General para el cargo de Delegado Especial a la Cámara, emitida el 1 de junio de 2021.
>
> 2. El 1 de julio de 2021, la señora Torres Rodríguez juramentó al cargo de delegada congresional y comenzó en sus funciones. Véase ANEJO I A Entrada Núm. 13 de SUMAC, *1er Informe Individual para el Pueblo de Puerto Rico: Al Rescate de la Estadidad*, a la pág. 34. Según surge del *1er Informe Individual para el Pueblo de Puerto Rico: Al Rescate de la Estadidad* publicado por la señora Torres Rodríguez, juramentó lo siguiente:
>
>> Juro solemnemente que mantendré, apoyaré y defenderé la Constitución de los Estados Unidos y la Constitución y las leyes del Gobierno de Puerto Rico contra todo enemigo interior o exterior, que prestaré fidelidad y adhesión a las mismas; que defenderé el mandato del Pueblo de

---

[3] KLAN202200406

Puerto Rico expresado en las urnas el pasado 3 de noviembre de 2020 de exigir que Puerto Rico sea admitido como un Estado de Estados Unidos y que trabajaré activamente a tiempo completo durante el término del cargo para lograr ese fin; y que asumo esta obligación libremente y sin reserva mental ni propósito de evadirla; y que desempeñaré bien y fielmente los deberes del cargo que estoy próximo a ejercer. Así me ayude Dios.

3. Como delegada electa y conforme con la Ley Núm. 167-2020, la señora Torres Rodríguez tiene dos deberes principales: (1) en representación de Puerto Rico, llevar a cabo gestiones dirigidas a defender activamente y a tiempo completo el mandato del Pueblo expresado el 3 de noviembre de 2020 a los efectos de exigir (sic) "exigir al Congreso federal que Puerto Rico sea admitido como un Estado de Estados Unidos"; y (2) rendir un informe cada noventa (90) días que contenga sus gestiones para adelantar tal propósito. Véase Arts. 8 y 12 de la Ley Núm. 167-2020.

4. La señora Torres Rodríguez publicó en la página web https://www.elitorrescongreso.com, los dos primeros informes y un video expresando que era su tercer informe, con el propósito de intentar cumplir con la Ley Núm. 167-2020. La publicación de dichos informes surge específicamente en el apartado "Informes para El Pueblo de PR". Véase ANEJO A, Página de Inicio.

5. El primer informe de 28 de septiembre de 2021 fue titulado por la señora Torres Rodríguez "*Informe Individual para el Pueblo de Puerto Rico, Al rescate de la Estadidad*["] y cubre los primeros tres meses de su cargo (julio a septiembre de 2021). En las 204 páginas de ese informe no consta gestión alguna, independientemente de cuál sea, que haya realizado la señora Torres Rodríguez para cumplir con los fines de la Ley Núm. 167-2020. Solo consta que hizo actos preparatorios para ejercer sus funciones como delegada. Véase ANEJO I A [al] I E de Entrada Número 13 de SUMAC, *1er Informe Individual para el Pueblo de Puerto Rico: Al Rescate de la Estadidad*, págs. 1-204.

6. Por el contrario, la señora Torres Rodríguez manifestó en su primer informe que "mantener viva la delegación es un acto de traición al pueblo" y catalogó a la delegación a la cual fue electa por el Pueblo de Puerto Rico para cumplir con la Ley Núm. 167-2020 como un "embeleco". Véase ANEJO I A y I E de Entrada Núm. 13 de SUMAC, *1er Informe Individual para el Pueblo de Puerto Rico: Al Rescate de la Estadidad*, págs. 35 y 204.

7. Asimismo, en el primer informe se concentró en criticar y rechazar el Plebiscito del 2020. En particular, expuso que esa "consulta fue un acto político desesperado para movilizar a los estadistas a acudir a las urnas". Véase ANEJO I C de Entrada Núm. 13 de SUMAC, *1er Informe Individual para el Pueblo de Puerto Rico: Al Rescate de la Estadidad*, pág. 139.

8. De otra parte, la señora Torres Rodríguez reconoció en su primer informe que exigir al Congreso hacer valer la voluntad del pueblo de Puerto Rico implica comparecer ante el Congreso, la Casa Blanca, agencias federales y tribunales para expresarse en relación con la admisión de Puerto Rico como un Estado de la Unión. Véase ANEJO I B de Entrada Número 13 de SUMAC, *1er Informe Individual para el Pueblo de Puerto Rico: Al Rescate de la Estadidad*, págs. 78. Igualmente, admitió que la tarea de un delegado congresional es que "esté de viaje por Washington D.C. tocando puertas, escribiendo cartas o pidiendo reuniones". Véase ANEJO I E de Entrada Número 13 de SUMAC, *1er Informe Individual para el Pueblo de Puerto Rico: Al Rescate de la Estadidad*, págs. 189. De la misma forma, reconoció que no veía "apropiado una reunión por Zoom con congresistas o staffers para atender un asunto de tal magnitud como el estatus de nuestra isla [...]". Véase ANEJO I C de Entrada Número 13 de SUMAC, *1er Informe Individual para el Pueblo de Puerto Rico: Al Rescate de la Estadidad*, págs. 97.

9. A pesar de lo antes señalado, la señora Torres Rodríguez en su primer informe expresó que "no hay nada que hacer en el Congreso. Si no tenemos nada que hacer en el Congreso, el propósito de la ley no puede ser cumplido. Y, si el propósito de la ley no puede ser cumplido, la existencia de la Delegación no tiene sentido". Véase ANEJO I E de Entrada Número 13 de SUMAC, *1er Informe Individual para el Pueblo de Puerto Rico: Al Rescate de la Estadidad*, págs. 189

10. Asimismo, en la página 204 del referido primer informe, la señora Torres Rodríguez solicitó que se disuelva el organismo establecido en ley. En lo pertinente, esbozó específicamente lo siguiente:

> En nombre de ese sector del pueblo que, ilusionado igual que yo, esperanzado igual que yo, salió a las urnas a escoger seis delegados, le pido que disuelva este cuerpo. No existe en ley nada que justifique nuestra existencia ni el gasto que, mantenerla por tres años, conlleva. Demasiadas cosas se han hecho mal, es hora de enmendarlas. Empiece con nosotros.

11. El segundo informe publicado en la página electrónica https://www.elizabethtorres.com/informes fue denominado *2do Informe Individual para el Pueblo de Puerto Rico: Al Rescate de la Estadidad*. Este informe cubre el periodo de septiembre a diciembre de 2021 y consta de 104 páginas. En dicho escrito, en contravención con las obligaciones de la Ley Núm. 167-2020, tampoco consta, independientemente de cuál sea, algún acto o gestión realizada para cumplir con los deberes que le impone su cargo. Véase ANEJO IIA-IIC de Entrada Núm. 13 de SUMAC, *2do Informe Individual para el Pueblo de Puerto Rico: Al Rescate de la Estadidad*.

12. De otro lado, en la página 80 del segundo informe, la señora Torres Rodríguez señaló que "ningún detalle sobre la estrategia a ejecutar y personas contactadas será ofrecido en esta etapa. Todo detalle y evidencia será presentado públicamente una vez culmine mi función como delegada". Véase ANEJO IIC de Entrada Núm. 13 de SUMAC, *2do Informe Individual para el Pueblo de Puerto Rico: Al Rescate de la Estadidad*, pág. 80.

13. Como tercer informe, la señora Torres Rodríguez decidió unilateralmente realizar un video que obra en la página web https://www.elizabethtorres.com/informe, titulado *Tercer Informe | Los Pierluisi y Secuaces: Una Pandemia de Corruptos en el Gobierno*. Al examinar dicho video, nuevamente, es forzoso concluir que la señora Torres Rodríguez tampoco realizó actos o gestiones para cumplir con su obligación de exigir al Congreso la admisión de Puerto Rico como estado. Al contrario, y acomodaticiamente, indicó de forma expresa que publicará esa información al final de su gestión como delegada. Véase ANEJO III, Entrada Núm. 13 de SUMAC, *Tercer Informe | Los Pierluisi y Secuaces: Una Pandemia de Corruptos en el Gobierno*, (mins. 26:20 - 26:30).

14. En el video la señora Torres Rodríguez se concentró en "denunciar" una supuesta persecución política contra ella, realizando críticas a lideres políticos, lideres gubernamentales, partidos políticos y a los demás delegados especiales. En particular, en relación con el propósito de su supuesto informe, indicó que "[...]la persecución, que es la denuncia que hago en este informe; lo informo. Estoy informando una denuncia que estoy haciendo [...]". Véase ANEJO III, Entrada Núm. 13 de SUMAC, Tercer Informe| Los Pierluisi y Secuaces: Una Pandemia de Corruptos en el Gobierno, (mins. 27:00- 27:30).

15. Asimismo, en el video expuso que como delegada tiene el deber de realizar gestiones adicionales y reconoció que eso último es lo que hace. Específicamente, indicó lo siguiente:

> Eso es exactamente lo que yo estoy haciendo. En mi carácter de delegada, estoy abriéndole los ojos al pueblo, en Puerto Rico y fuera de Puerto Rico. En mi carácter de delegada, llevo al Congreso las quejas que yo entienda pertinente que afectan a este pueblo. Eso es lo que yo hago, en mi carácter de delegada. En mi carácter de delegada, me involucro en todo asunto que tenga que ver con la Constitución federal y la violación de derechos. Eso no lo está haciendo ninguno de los otros delegados, que lo que hacen es robarle al pueblo y engañarlos.

16. La señora Torres Rodríguez obtiene su salario de los fondos públicos asignados a la Administración de Asuntos Federales de Puerto Rico (PRFAA, por sus

siglas en inglés). Véase Art. 13 de la Ley Núm. 167-2020.[4]

El 17 de mayo de 2023, la señora Torres Rodríguez presentó *Moción en Oposición a Sentencia Sumaria del Estado Libre Asociado de Puerto Rico y en Solicitud de Sentencia Sumaria*. En resumen, argumentó los mismos asuntos presentados en sus mociones de desestimación del 8 de abril de 2022 y 4 de mayo de 2023. También listó unos hechos que, según ella, derrotaban la solicitud de sentencia sumaria del Gobierno. Nos llama la atención que en la oposición a la sentencia sumaria y en solicitud de sentencia sumaria a su favor, la señora Torres Rodríguez no incluyó determinaciones de hechos esenciales que no estuvieran en controversia.

Con fecha del 21 de junio de 2023, el Gobierno replicó argumentando que la oposición de la señora Torres Rodríguez, entre otras cosas, no cumplió con el estándar de la Regla 36 de las de Procedimiento Civil.

El TPI, luego del correspondiente análisis de los escritos presentados, declaró *No Ha Lugar* la *Moción de Desestimación por Violación a la Separación de Poderes y Vaguedad del Estatuto* presentada por la señora Torres Rodríguez. En el mismo dictamen, declaró *Ha Lugar* la *Moción de Sentencia Sumaria* presentada por el Gobierno. En la *Sentencia*, el TPI formuló los siguientes veintiséis (26) determinaciones de hechos esenciales incontrovertidos:

1. La señora Torres Rodríguez participó como candidata a delegada especial en la elección especial celebrada el 16 de mayo de 2021, específicamente, como candidata a delegada especial en la Cámara de Representantes del Congreso de los Estados Unidos y resultó electa.

2. El 1 de julio de 2021, la señora Torres Rodríguez juramentó al cargo de Delegada Congresional y comenzó en sus funciones.

3. El Primer Informe corresponde a los meses de julio a septiembre de 2021 y contiene los actos preparatorios a lo que serían sus funciones como

---

[4] Subrayado, negrillas y notas al calce suprimidas.

delegada. Específicamente, se pueden encontrar estos actos preparatorios en las páginas 37-45, 49-50, 57-61, 72-80, 92-95, 104-109, 119-124 y 132-138.

4.      El Segundo Informe corresponde a los meses de julio a septiembre de 2021[5]. En este informe la Peticionada incluyó, en las páginas 78-81, las gestiones relacionadas a los meses de octubre a diciembre. La Señora Torres Rodríguez incluyó como gestiones lo siguiente: reuniones con puertorriqueños en otros estados; reuniones relacionadas a la iniciativa "Avanzando con Libertad"; conversaciones con líderes y ciudadanos que no militan en el Partido Nuevo Progresista para continuar la iniciativa "La estadidad desde la verdad"; discusión con miembros del "Think Tank", manejo de redes sociales y entrevistas.

5.      El Tercer Informe de la Sra. Elizabeth Torres fue presentado por medio de un video el cual tiene una duración de 1 hora y 70 segundos.

6.      Inicia con la imagen de la Sra. Elizabeth Torres en un primer plano, dirigiéndose a la cámara. Inicia preguntándole al Gobernador de Puerto Rico sobre lo que ha hecho por la estadidad y expresando que es antiestadista y un líder de izquierda. Inmediatamente aparece una imagen que se trata de un collage de fotos de distintas figuras públicas del ambiente de la salud y política local. Aparece identificado como TERCER INFORME / POR: ELIZABETH TORRES/ DELEGADA CONGRESIONAL. Además, incluyó la frase LOS PIERLUISI Y SECUACES: UNA PANDEMIA DE CORRUPTOS EN EL GOBIERNO. Es de notar que, sobre el surtido de fotos, aparece de forma diagonal la palabra ASESINO. Inmediatamente inicia un montaje de diversos recortes de periódicos, en los que se muestran la imagen de la Sra. Torres y se escucha la voz de la periodista Ivonne Solla. Tratándose un informe periodístico de la Señora reportera y del periodista Luis Guardiola. Luego se integran imágenes y vídeos de otras fuentes periodísticas intercalando con recortes de notas periodísticas las que le incluye títulos que muestren su disgusto con la Ley y la elección de los Delegados Congresionales. Se puede observar que incluyó en el video algunas páginas sobre las gestiones que informó haber realizado durante el periodo comprendido en el primer y segundo Informe.

7.      En los primeros 9 minutos aparecen múltiples fuentes periodísticas, entrevistas con diversos periodistas radiales e imágenes de reportajes de prensa escrita y digital. En todos, la imagen o figura principal es la Sra. Torres. Cuando expresa disgusto sobre el proceder de alguna figura de la política, proyecta la imagen de la persona o reportajes sobre incidentes ocurridos con éste. En todo momento ha expresado su malestar con la Ley de los Delegados Congresionales,

---

[5] Según el Apéndice del recurso, a la página 499, el segundo informe incluye los meses de septiembre a diciembre de 2021.

así como expresa críticas hacia varios miembros del Partido Nuevo Progresista.

8.    En el minuto 9:35 se proyecta nuevamente la imagen que identifica el video como el Tercer Informe e inicia lo que será el Tercer Informe.

9.    Empieza analizando la Ley Núm. 167. Expresa su disgusto por los comentarios de algunos funcionarios públicos del Gobierno de Puerto Rico con relación al segundo Informe. Expone sobre el uso que el resto de los Delegados le dan al dinero que obtienen y critica el que uno de los Delegados no cobra, argumentando sobre las razones detrás de dicha decisión de no cobrar salario. Nuevamente, repite asuntos que presentó en el segundo Informe.

10.    A partir del minuto 21, las críticas a ciertos funcionarios públicos incrementan tildándolos de corruptos o ladrones, etc. Los acusa de haber secuestrado y prostituido la estadidad y se han enriquecido vendiendo falsas expectativas. Sostiene que la Delegación no surtirá ningún efecto en favor del PNP. Que solamente la Sra. Torres le mostrará al Pueblo el fruto de su trabajo al final.

11.    En el minuto 26:30 expresa que en el Informe quiere denunciar la persecución política que tiene el Gobernador de Puerto Rico, el Secretario del Partido Nuevo Progresista y la Directora Ejecutiva de PRAFA contra la Sra. Torres. Argumenta que estos funcionarios no han parado de acusarla de no estar haciendo su trabajo.

12.    En el minuto 29:05 expone que ha hecho querellas ante el Secretario de Justicia contra los demás Delegados por no hacer su trabajo. Los tilda de grupitos de demócratas de quienes expresa que la odian por ser conservadora y por estar en contra de la perspectiva de género. Argumenta sobre una de las Delegadas y las columnas escritas en su contra.

13.    En el minuto 32:20 expresa que los Delegados actúan con pl[e]na autonomía y sostiene que le ha solicitado al Gobernador la disolución de la Delegación. Argumenta que los demás Delegados no hacen su trabajo, que la única que cumple con sus funciones es ella.

14.    En el minuto 35 y siguientes se dedica a expresar que la Delegación se hizo para repartir sueldos. Que la Ley no logrará sus objetivos. Expresa como fueron llamados cada uno de los Delegados para ofrecerles el trabajo de Delegado. Acusa de cometer actos de corrupción a los demás Delegados. Los tilda de una Delegación manchada, mancillada.

15.    En el minuto 36:53 intercaló los primeros 26 segundos del video. Durante los siguientes minutos se dedica a criticar al Gobernador informando que no ha hecho nada por la estadidad. Expone que ninguno de

los demás Delegados han trabajado por la estadidad y los tilda de ir a pasear por Washington DC. Que la única que ha trabajado por la estadidad es ella, que lo puede hacer desde Puerto Rico y desde Washington pero a su tiempo y su manera, pero el Gobernador no lo puede saber porque todo lo que ella hace lo usan en su contra. Nuevamente, expresa que el Gobernador no ha hecho nada por la estadidad porque es de izquierda. Expone que, si el Gobernador no ha hecho nada por la estadidad, tampoco lo pueden hacer los Delegados porque no pueden ir por encima del Gobernador.

16.    Acusa al Gobernador de llevar una agenda en su contra porque la Sra. Torres le dice la verdad al Pueblo.

17.    A partir del minuto 40 se dedica a atacar la familia del Gobernador. Además, critica al Gobernador por darle dinero a las feministas. Critica a otros funcionarios públicos por la desaparición de niños y la alegada falta de atención a los maltratos de menores. Critica al Presidente de los Estados Unidos, Joe Biden, por sus intenciones de nombrar jueces que pretenden bajar las penas a los agresores sexuales.

18.    En el minuto 45:16 menciona a la Autoridad de Puertos y Carreteras y el asunto de los mangles de Salinas.

19.    En el minuto 45:50 expresa: "y para terminar, el Covid 19". Inmediatamente se proyecta un video con una imagen de un deportista en el suelo y se escucha una voz en inglés de múltiples reportajes sobre personas que han colapsado y que se alega fue a consecuencia de las vacunas. Se trata de 4 minutos de imágenes y videos de los grupos antivacunas. Incluye imágenes del Gobernador tildándolo de corrupto y asesino de niños. Lo acusa de seguir la agenda genocida del Presidente de los Estados Unidos que se trata de crear un Nuevo Orden Mundial. Lo acusa de haber utilizado a su "gente" de eliminarle información de sus redes sociales y de haberle cancelado la cuenta de Instagram.

20.    En el minuto 52:32 presenta una imagen de una actividad, el Puerto Rico Covid Summit, realizada el sábado 26 de marzo de 2022 en el Centro de Convenciones de San Sebastián con el Alcalde, Hon. Javier Jiménez. La actividad es sobre los efectos adversos de la vacuna. Expresa que en la actividad se expresó sobre los efectos de la vacuna del Covid 19. Integró el video que, sobre la actividad, el reportaje periodístico de Telemundo informó en el noticiero. Anunció que la actividad es para atender unos problemas de salud que algunas personas están presentando por la inoculación de la vacuna. Además, se hablará sobre la salud holística y el ámbito espiritual.

21.    En el minuto 56:05 inicia nuevamente la imagen de la Sra. Torres expresando que "no importa los trucos que ustedes hagan para sacarme de aquí porque en Ley

no lo pueden hacer, yo voy a seguir haciendo mi trabajo". Acusa nuevamente al Gobernador y al Presidente de los Estados Unidos, de comprar los medios corporativos tradicionales. Nuevamente los tilda de asesinos por negarle la verdad al Pueblo por censurar los medios.

22. Finaliza expresando que este es su tercer Informe. Que hará otro, informando las gestiones que ha realizado y que le importa muy poco lo que el Gobernador opine del mismo.

23. En el minuto 57:40 aparece el video musical de la canción Welcome to the Revolution de Hi-Rez & Jimmy Levy.

24. El tercer informe es una compilación de diversas fuentes periodísticas en las que, se recurre a videos, música, reportajes de televisión y entrevistas radiales. Procura resaltar su imagen como la única Delegada Congresional que se encuentra trabajando por la estadidad. Esto lo hace a través de múltiples y variadas críticas contra varios funcionarios públicos e incluso hacia los demás Delegados Congresionales.

25. Durante el video la Sra. Torres no expresa qu[é] gestiones realizó durante los 90 días anteriores al mismo.

26. No existe otro Informe, ya sea por escrito o mediante video que haya sido presentado como Tercer Informe.

Luego de considerar las solicitudes de sentencia sumaria, oposiciones y réplicas, y las determinaciones de hechos antes mencionadas, el TPI precisó que la controversia se circunscribía a determinar si los informes que entregó la señora Torres Rodríguez cumplieron con el texto del Art. 12 de la Ley Núm. 167-2020. Al respecto, concluyó que los primeros dos informes cumplieron con el texto de la disposición legal; no así el Tercer Informe, que incumplió con los requerimientos de ley, al no ofrecer el detalle de las gestiones realizadas en los tres meses anteriores. Así pues, el TPI dictó la *Sentencia* destituyendo a la señora Torres Rodríguez como Delegada Especial o Delegada Congresional de Puerto Rico en la Cámara de Representantes del Congreso de los Estados Unidos, ante su incumplimiento con el Artículo 12 de la Ley Núm. 167-2020, *supra.*

Insatisfecha con el dictamen, el 10 de julio de 2023, la señora Torres Rodríguez presentó una solicitud de reconsideración.  En la misma fecha, el TPI la atendió y la declaró *No Ha Lugar*.

En desacuerdo con la determinación del TPI, la señora Torres Rodríguez, presentó un recurso de *Apelación* y apuntó los siguientes señalamientos de error:

I.     ERR[Ó] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESTITUIR A UNA FUNCIONARIA ELECTA POR EL VOTANTE DE MANERA SUMARIA SIN SEGUIR EL DEBIDO PROCESO DE LEY PROCESAL Y SUSTANTIVO.

II.    ERR[Ó] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO PERMITIRLE A LA APELANTE CONTESTAR LA DEMANDA, ESTABLECER SUS DEFENSAS, LLEVAR A CABO DESCUBRIMIENTO DE PRUEBA, INTERROGAR TESTIGOS EN JUICIO, TESTIFICAR A SU FAVOR EN CORTE ABIERTA, PRESENTAR PRUEBA DOCUMENTAL Y TESTIFICAL, PREVIO A DECRETAR POR SENTENCIA SU DESTITUCION SUMARIA.

III.   ERR[Ó] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL VIOLENTAR LA ESTRUCTURA DE SEPARACION DE PODERES AL ESTABLECER PARAMETROS, CRITERIOS, FACTORES DE DESTITUCION DE LA APELANTE SIN ESTOS ESTAR DE MANERA EXPRESA Y LITERAL EN LA LEY ESPECIAL DE DELEGADOS, EN EFECTO, EJERCIENDO LA RAMA JUDICIAL EL PODER DE ENMENDAR LEYES Y PROCEDIMIENTOS QUE LE CORRESPONDEN A LA RAMA LEGISLATIVA DE GOBIERNO.

IV.    ERR[Ó] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESTITUIR A LA APELANTE AL NO AGRADARLE EL CONTENIDO DE LAS EXPRESIONES POLITICAS QUE ELLA HIZO AL AMPARO DE SU DERECHO A LA LIBRE EXPRESIÓN EN EL TERCER INFORME, CONCLUYENDO QUE EL CONTENIDO CRITICO DEL INFORME NO CONSTITUIA UNA GESTION A FAVOR DE LA ESTADIDAD DENTRO DEL PROCESO POLITICO PARA LOGARAR LA ESTADIDAD.

V.     ERR[Ó] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO ANALIZAR EL EFECTO DEL PROCESO SUMARIO EN LOS INTERESES DE LOS VOTANTES QUE ELIGIERON A LA APELANTE MEDIANTE EL VOTO DIRECTO.

**II.**

El principio rector de las Reglas de Procedimiento Civil es proveerle a las partes envueltas en un pleito legal, una solución justa, rápida y económica en todo procedimiento. Regla 1 de

Procedimiento Civil, 32 LPRA Ap. V, R.1. El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, hace viable este objetivo en aquellos casos en que surja de forma clara que **no existen controversias** materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita.

Conforme a la Regla 36.3 (e) de Procedimiento Civil, supra, se dictará sentencia sumaria "si las alegaciones, deposiciones, contestaciones e interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y, además, si el derecho aplicable así lo justifica". A estos efectos, el foro judicial tiene la potestad para disponer de asuntos pendientes sin la necesidad de celebrar un juicio, esto debido a que lo que restaría sería aplicar el derecho a los hechos no controvertidos. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012).

Es menester destacar, que solo procede dictar sentencia sumaria cuando surge claramente que el promovido no puede prevalecer y que el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Mejías et al. v. Carrasquillo et al.*, supra, pág. 299. Por lo tanto, no procede dictar sentencia sumaria cuando no existe una clara certeza sobre todos los hechos materiales en la controversia. *Íd.* Aun así, "[c]ualquier duda no es suficiente para derrotar una moción de sentencia sumaria. Tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes". *Ramos Pérez v. Univisión*, 178 DPR 200, 214 (2010). En reiteradas ocasiones, el Tribunal Supremo ha establecido que se considera como un hecho esencial y pertinente, aquel que "puede afectar el resultado de la reclamación acorde con el derecho sustantivo aplicable". *Íd.*, pág. 213. Dicho esto, para que proceda

una moción de sentencia sumaria no tan solo se requiere que haya una inexistencia de hechos en controversia, sino que también la sentencia que dicte el foro judicial tiene que proceder conforme al derecho sustantivo aplicable.

En particular, la Regla 36.2 de Procedimiento Civil, *supra*, permite que cualquier parte presente una moción, basada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". *Municipio de Añasco v. ASES et al.*, 188 DPR 307, 310 (2013).

Por su parte, el oponente a una solicitud de sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018). Por el contrario, esa persona viene obligada a enfrentar la moción de su adversario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado, corre el riesgo de que se dicte sentencia en su contra. *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013). Específicamente, la Regla 36.3 de Procedimiento Civil, *supra*, expone los criterios que debe cumplir la parte que se opone a la moción de sentencia sumaria.

Al amparo de dicha regla, en la oposición a la solicitud de sentencia sumaria el promovido debe, como parte de su carga, desglosar los hechos sobre los que aduce que no existe controversia, y, además para cada uno de ellos debe especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que

lo apoya. Asimismo, cabe destacar que, la Regla 36.5 de Procedimiento Civil, *supra,* establece que las declaraciones juradas para sostener u oponerse a una moción de sentencia sumaria que contienen solo conclusiones, sin hechos específicos que las apoyen, no tienen valor probatorio, por lo que son insuficientes para demostrar la existencia de lo que allí se concluye.

Según dispone el caso de *Mejías et al. v. Carrasquillo et al.*, supra, pág. 300 citando a *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 280-281 (1990), "al evaluar una moción de sentencia sumaria, los jueces no están limitados por los hechos o documentos que se aduzcan en la solicitud, sino que deben considerar todos los documentos en autos, sean o no parte de la solicitud de sentencia sumaria de los cuales surjan admisiones hechas por las partes".

En síntesis, no procede dictar sentencia sumaria cuando: (1) existen hechos materiales y esenciales en controversia; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción de sentencia sumaria una controversia real sobre algún hecho material y esencial; (4) como cuestión de derecho no procede. *Pepsi-Cola v. Mun. Cidra,* 186 DPR 713, 757 (2012); *Ramos Pérez v. Univisión, supra,* pág. 217. Además, no se debe adjudicar un caso sumariamente cuando existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor credibilidad es esencial y está en disputa. *Íd.* pág. 219.

Ahora bien, conforme resuelto por el Tribunal Supremo en *Vera v. Dr. Bravo,* 161 DPR 308, 334-335 (2004), este foro apelativo utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sin embargo, el Tribunal Supremo especifica que, al revisar la determinación de primera instancia sólo podemos considerar los documentos que se

presentaron ante el TPI. *Íd.* Lo anterior, debido a que "las partes no pueden añadir en apelación exhibits, deposiciones o affidávits que no fueron presentadas oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo". *Íd.* Además, sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Íd.* Es decir, no podemos adjudicar los hechos materiales y esenciales en disputa, ya que esta tarea le corresponde al Tribunal de Primera Instancia. *Íd.*

Por otro lado, en *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118 (2015), el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*, y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo*, supra; (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho. Véase, además, *Rivera Matos, et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020).

**III.**

Como cuestión umbral, la revisión del caso ante nos, está estrechamente relacionada a nuestro dictamen del caso *Gobierno de Puerto Rico v Elizabeth Torres Rodríguez, KLAN202200406, Sentencia* del 21 de junio de 2022. Allí lo resuelto y ordenado al foro primario fue, "...si, de conformidad con el lenguaje empleado en la

Ley Núm. 167-2020, *supra,* la parte apelada ha cumplido con sus deberes como delegada especial". En específico, ordenamos al Tribunal de Primera Instancia dilucidar si la señora Torres Rodríguez cumplió con someter sus informes, si dichos informes fueron sometidos adecuadamente conforme el texto legislativo, si el Gobernador está siendo notificado sobre las gestiones o actos ejecutados, y si está trabajando activamente. Al así resolver, concluimos que los criterios antes mencionados eran totalmente susceptibles de análisis por el foro primario, con el fin de determinar si se violentó o no el estatuto en controversia.

Por otro lado, y en la misma *Sentencia* también fueron atendidos y resueltos todos los argumentos relacionados a la cuestión política. Así las cosas, y luego de los trámites de rigor, nuestro dictamen en el KLAN202200406 se convirtió en final, firme y vinculante para el foro que atendería las controversias futuras. No empece lo antes mencionado, en el recurso de *Apelación* que nos ocupa, la señora Torres Rodríguez insiste que su caso es uno que viola la separación de poderes. Lo anterior, ignorando que nuestro Tribunal Supremo rechazó todos sus argumentos cuando denegó el *certiorari*[6].

Con el marco de referencia antes expuesto, y estando en la misma posición que el TPI al entender en una solicitud de sentencia sumaria, luego de evaluar la totalidad del expediente apelativo, resolvemos.

**IV.**

En su recurso, la señora Torres Rodríguez cuestiona la *Sentencia* del foro primario que declaró ha lugar *la Moción de Sentencia Sumaria* presentada por el Gobierno de Puerto Rico. Lo anterior, con el efecto de destituir a la señora Torres Rodríguez como

---

[6] *Gobierno de Puerto Rico v. Elizabeth Torres Rodríguez* CC-2022-0580, Resolución del 14 de abril de 2023 y mandato del 18 de abril de 2023.

Delegada Especial o Delegada Congresional de Puerto Rico en la Cámara de Representantes del Congreso de los Estados Unidos, ante el incumplimiento con el Artículo 12 de la Ley Núm. 167-2020, *supra*. Según expresamos, y en virtud de la normativa antes expuesta, debemos revisar de *novo* el reclamo sumario que instó el Gobierno, la correspondiente oposición de la señora Torres Rodríguez, junto a los respectivos anejos, para así evaluar el dictamen impugnado.

Primeramente, nos corresponde examinar si ambas partes cumplieron con los requisitos de forma que exige la Regla 36, *supra*, para luego examinar si existen hechos materiales en controversia que impidan la adjudicación del caso sumariamente para después aplicar y analizar el derecho aplicable.

Según mencionado, los tribunales apelativos estamos en igual posición que el foro sentenciador al revisar un petitorio sumario. Conforme a la norma aplicable, quien se opone a que se declare con lugar una solicitud de sentencia sumaria viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente. Así, en su oposición, el promovido debe puntualizar aquellos hechos propuestos que pretende controvertir y hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, *supra*.

La *Moción de Sentencia Sumaria* presentada por el Gobierno ante el foro primario contiene una exposición breve de las alegaciones de las partes, una relación de los asuntos en controversia, el petitorio sumario del cual se solicitó se resolviera, una relación organizada y puntual en párrafos numerados sobre los hechos esenciales y pertinentes que no están en controversia, con la documentación existente que los sustentan. Igualmente, incluyó las razones para la procedencia del dictamen sumario a favor del

Gobierno y el remedio a ser concedido[7].  Por lo anterior, concluimos que la solicitud del Gobierno de Puerto Rico cumplió con los requisitos estatutarios y jurisprudenciales exigidos por la Regla 36.3 de las de Procedimiento Civil, *supra*.

En otro extremo, examinada la *Moción en Oposición a la Sentencia Sumaria del Estado Libre Asociado de Puerto Rico y en Solicitud de Sentencia Sumaria* radicada por la señora Torres Rodríguez, ésta presenta incumplimientos insalvables con la Regla 36.3 de Procedimiento Civil.  El escrito de la señora Torres Rodríguez no contiene una exposición breve de las alegaciones, no establece los asuntos en controversia; no expone una relación concisa y organizada, con referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal de Primera Instancia.  Tampoco hace mención alguna de los hechos materiales que no están en controversia, ni presentó prueba documental o declaraciones juradas que controvirtieran los hechos materiales propuestos por el Gobierno.  Igualmente, al ser la señora Torres Rodríguez proponente de una petición de sentencia sumaria, le correspondía a ésta enumerar los hechos esenciales y pertinentes, que, a su juicio, no están en controversia, en párrafos separados y hacer referencia específica a la prueba que apoya cada hecho propuesto y afirmado. En fin, su escrito incumple los requisitos de forma exigidos en la Regla 36.3 de Procedimiento Civil, *supra*.  A su vez, al evaluar la *Moción en Oposición* surge que la señora Torres Rodríguez no

---

[7] Véase Índice del Apéndice, Anejo XXI, págs. 103-140.

controvirtió ninguno de los dieciséis hechos esenciales y pertinentes esbozados por el Gobierno.

Además, la señora Torres Rodríguez se limitó en su escrito en oposición a establecer una lista de alegados hechos en controversia[8]. Sin embargo, esta falló en controvertir los hechos esenciales y pertinentes esbozados por el Gobierno en su *Moción de Sentencia Sumaria*, con prueba admisible o declaraciones juradas. Dado a que la señora Torres Rodríguez es la parte que presenta la oposición a la moción de sentencia sumaria, tenía que rebatir los hechos sobre los cuales alega que existe controversia con prueba admisible o declaraciones juradas, pues el ordenamiento jurídico no permite meras alegaciones para controvertir los hechos propuestos como no controvertidos en una moción de sentencia sumaria.

Específicamente, la señora Torres Rodríguez se limitó a incluir una lista de aseveraciones bajo el título "Hechos sobre los que existe Controversia" de siete (7) incisos numerados del 12 al 18.[9] No obstante, examinados por separado cada uno de los alegados hechos en controversia, concluimos que ninguno constituye un hecho esencial, ni pertinente que impedía que el foro primario adjudicara el caso por la vía sumaria. Más bien, la señora Torres Rodríguez alegó asuntos de derechos que fueron atendidos en nuestra *Sentencia* del 21 de junio de 2023, la cual hoy es final y firme. De modo que, contrario a lo que aduce la señora Torres Rodríguez, no existe controversia sustancial sobre ellos.

Por otro lado, en los párrafos 21 y 22 de la Oposición[10], la señora Torres Rodríguez incluyó una lista de hechos, los cuales tampoco cumplen con los requisitos procesales y sustantivos contenidos en la Regla 36.3 de Procedimiento Civil, *supra*, ni los

---

[8] Véase, Índice del Apéndice, Anejo X, págs. 62-63.
[9] *Íd.*
[10] Véase, Índice del Apéndice, Anejo X, págs. 64-65.

criterios dispuestos por el Tribunal Supremo en *SLG Zapata-Rivera v. JF Montalvo,* supra, al oponerse a una petición de sentencia sumaria. En los párrafos 19 al 23 del mismo escrito, la señora Torres Rodríguez mezcla hechos para intentar contestar y rebatir la *Moción de Sentencia Sumaria* presentada por el Gobierno al amparo de la Regla 36.3 (b) y, a su vez, trata justificar su propia solicitud de sentencia sumaria.

No obstante, de la Regla 36.3 (b) de Procedimiento Civil, se colige que, para que la contestación a una moción de sentencia sumaria cumpla con el orden legal, se requiere que la parte que desea tanto derrotar como establecer que un hecho está o no está en controversia tiene que acreditarlo con prueba documental, prueba admisible o una declaración jurada, relacionando cada hecho con la prueba documental o la declaración jurada. Lo anterior, no ocurrió en el escrito presentado por la señora Torres Rodríguez, quien no derrotó los hechos esenciales y pertinentes establecidos en la solicitud de sentencia sumaria del Gobierno, ni pudo establecer cómo los hechos que propone en la petición de sentencia sumaria a su favor son incontrovertidos.

En resumen, la señora Torres Rodríguez no presentó, en su contestación u oposición a la solicitud de sentencia sumaria del Gobierno una relación concisa y organizada en la que hiciera referencia a los párrafos enumerados de los hechos esenciales y pertinentes que están controvertidos. Lo anterior, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia presentado en el expediente del foro primario.

De otra parte, en la *Moción en Oposición*, en el párrafo 4 y en la súplica[11], la señora Torres Rodríguez solicitó que se dictara Sentencia Sumaria a su favor. Sin embargo, el escrito no contiene ninguno de los requisitos medulares regulados por la Regla 36.3 (a) de las Reglas de Procedimiento Civil. Primero, el escrito carece de una exposición breve de las alegaciones de las partes. Segundo, la petición de sentencia sumaria de la señora Torres Rodríguez no establece de manera puntual los asuntos litigiosos o en controversia. Al contrario, el escrito de la señora Torres Rodríguez establece como controversias asuntos que fueron atendidos en nuestra *Sentencia* del 21 de junio de 2022[12]. Lo anterior, ante el hecho que la señora Torres Rodríguez insistía que operaba la doctrina de "separación de poderes". Tercero, el escrito carece de lo primordial cuando se presenta una petición para que se dicte sentencia sumaria a su favor, que es "una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba e admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal".

Por último, la señora Torres Rodríguez nunca estableció las razones por las cuales debe ser dictada la sentencia a su favor hilvanando los hechos al amparo del derecho aplicable. Por el contrario, la petición de sentencia sumaria de la señora Torres Rodríguez apoya indirectamente la contención del Gobierno, al intentar introducir gestiones las cuales no obran en sus tres primeros informes. Adviértase, que la señora Torres Rodríguez, en la declaración jurada que acompañó a la Oposición, admitió

---

[11] Véase Índice del Apéndice, Anejo X, págs. 61 y 73.
[12] KLAN202200406.

diáfanamente lo siguiente: "que como parte de los requisitos para la sentencia sumaria, incluyo gestiones adicionales como Delegada electa durante el periodo de los primeros tres informes que redacté y remití al Gobernador". Estas gestiones, según representadas por la señora Torres Rodríguez, tampoco estaban avaladas con alguna prueba documental. Estas alegadas gestiones, al no ser parte de los informes, resultaban inconsecuentes para el TPI al resolver el caso sumariamente y ahora para nosotros en la etapa apelativa.

Visto lo anterior, concluimos que el proceder del foro primario, al resolver sumariamente a favor del Gobierno, fue una actuación adecuada y avalada por la norma jurídica. Así las cosas, ahora analizaremos los argumentos esbozados por la señora Torres Rodríguez en su escrito de *Apelación*.

**V.**

En el recurso de *Apelación* la señora Torres Rodríguez, entiende que el TPI erró al destituirla de manera sumaria, siendo ella una funcionaria electa, sin seguir el debido proceso de ley procesal y sustantivo. Igualmente, señaló como error, que el foro primario incidió al no permitirle contestar la demanda, establecer sus defensas, llevar a cabo descubrimiento de prueba, interrogar testigos en juicio, testificar a su favor en corte abierta y presentar prueba documental y testifical. Al analizar el escrito de *Apelación* no encontramos una discusión, ni fundamentos precisos de estos primeros dos errores. En su escrito la señora Torres Rodríguez plasma su interpretación de la Ley Núm. 167-2020, *supra*, de manera muy general; menciona que las actuaciones del Secretario de Justicia son "actos políticos" en contra de la señora Torres Rodríguez y argumenta también de forma muy general, premisas constitucionales para establecer que ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley. La

redacción de estos argumentos, no nos convencen y mucho menos, resultan persuasivos para revocar el dictamen recurrido.

Una interpretación razonable de los argumentos de la señora Torres Rodríguez parecen sugerir que el foro primario incidió al resolver el pleito por la vía sumaria, debido a que la *Moción de Sentencia Sumaria* presentada por el Gobierno resultaba prematura, toda vez que, aún no había contestado la demanda ni se había llevado a cabo descubrimiento de prueba.

En lo que respecta a la presentación de una solicitud de sentencia sumaria por la parte que solicita un remedio, la Regla 36.1 de Procedimiento Civil, *supra,* dispone que:

> Una parte que solicite un remedio podrá, *en cualquier momento* después de haber transcurrido veinte (20) días a partir de la fecha en que se emplaza la parte demandada, o después que la parte contraria le haya notificado una moción de sentencia sumaria, pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada.

La Regla antes mencionada, reconoce dos instancias en las que una parte que solicite un remedio puede presentar una solicitud de sentencia sumaria, a saber: (1) después que la parte contraria le haya notificado una moción de sentencia sumaria, o (2) después de transcurridos veinte (20) días desde que la parte demandada fue emplazada. En el presente caso, la señora Torres Rodríguez fue emplazada el 5 de abril de 2022. Por su parte, la *Moción de Sentencia Sumaria* del Gobierno fue presentada el 5 de mayo de 2023. Por lo tanto, resulta evidente que, al momento en que se presentó la *Moción de Sentencia Sumaria,* ya habían transcurrido más de veinte (20) días desde que la parte apelante fue emplazada.

Siendo así, no le asiste la razón a la señora Torres Rodríguez. La *Moción de Sentencia Sumaria* del Gobierno fue oportuna.

En cuanto al argumento referente al descubrimiento de prueba, lo cierto es que las normas procesales concernientes a las sentencias dictadas de manera sumaria contemplan que los tribunales, en el ejercicio de su discreción podrían posponer la evaluación de la adjudicación de una sentencia sumaria para que las partes tengan una oportunidad razonable de efectuar un descubrimiento de prueba, de ser necesario. Sin embargo, nada impide que se dicte una sentencia sumaria previo o durante un descubrimiento de prueba. Tampoco establece que no pueda ser dictada hasta después de concluido un descubrimiento de prueba.

De conformidad con la Regla 36 de Procedimiento Civil, una solicitud de sentencia sumaria puede ser presentada por cualquier parte en el pleito y en cualquier momento, a partir de la fecha en que se emplaza a la parte demandada, pero no más tarde de los treinta (30) días siguientes a la fecha establecida por el tribunal para concluir el descubrimiento de prueba. Si al evaluar la moción de sentencia sumaria, su oposición y la prueba documental sometida se desprende que no existe controversia de hechos materiales, el tribunal podrá dictar sentencia sumaria, si así procede en derecho. Tal y como lo hizo el TPI en el presente caso. Por ello, no tiene mérito el señalamiento de error relacionado con que la falta de descubrimiento de prueba impedía que el foro primario dictara sentencia sumaria a favor del Gobierno.

La señora Torres Rodríguez también arguye que el foro primario erró al destituirla por no agradarle el contenido de las expresiones políticas que ésta hizo al amparo de su derecho a libertad de expresión en el Tercer Informe, concluyendo que el contenido crítico del informe no constituía una gestión a favor de la estadidad dentro del proceso político para lograrla. A tales efectos,

adujo que el foro primario "*basó la determinación de destitución en un criterio subjetivo de que gestiones alcanzan la estadidad*". Según la señora Torres Rodríguez, el foro apelado *"[n]o acepta ni concibe que esto se logra con las expresiones públicas y políticas de la [a]pelante censurando la estrategia del Partido Nuevo Progresista (PNP) para obtenerla, expresiones que están cobijadas por el derecho a libertad de expresión de la Primera Enmienda de la Constitución de los Estados Unidos".* Sin embargo, entendemos que la *Sentencia* aquí recurrida se distancia de tales argumentos, veamos.

El Artículo 12 de la Ley 167-2020, *supra,* titulado *Deberes de los Delegados*, establece lo siguiente:

> Luego de que sean certificados por la Comisión Estatal de Elecciones, los delegados comenzarán sus funciones el 1 de julio de 2021. Una vez comiencen sus funciones, los delegados presentarán un informe cada noventa (90) días sobre sus gestiones al Gobernador de Puerto Rico. El incumplimiento de alguno de sus deberes dará paso a un proceso, que podrá ser incoado por el Secretario de Justicia ante el Tribunal de Primera Instancia para destituir al delegado si se demuestra su incumplimiento.

En la *Sentencia* apelada, al interpretar la precitada disposición, el foro primario concluyó que "[l]a ley no establece claramente los deberes de los delegados ante el Congreso de los Estados Unidos, pero si establece un deber ante el Gobierno de Puerto Rico. Todos los delegados están obligados a presentar un informe, cada 90 días, al Gobernador de Puerto Rico, sobre las gestiones que ha llevado a cabo durante ese término". Establecido lo anterior, el foro primario analizó la prueba presentada por el Gobierno para demostrar el incumplimiento de la señora Torres Rodríguez, a saber: los primeros tres informes que la señora Torres Rodríguez presentó sobre las gestiones que esta había llevado a cabo.

En cuanto al Primer Informe, el foro primario señaló que este contiene los actos preparatorios a lo que serían las funciones como

delegada de la señora Torres Rodríguez y determinó que estos se deben considerar como gestiones según la ley. Al así concluir, el foro apelado consignó lo siguiente:

> Debemos recordar que el texto de la ley no establece qué, específicamente, se debe considerar como una gestión y si esa gestión realizada fue efectiva para adelantar la admisión de Puerto Rico como estado de los Estados Unidos. Por lo tanto, el texto de la ley solo requiere que este Tribunal analice si se cumplió con el deber de emitir un informe en el cual se detallen las gestiones realizadas en los 3 meses anteriores.

Concurrimos con el foro primario en que la Ley Núm. 167-2020, *supra*, no establece específicamente qué se debe considerar como una gestión y cuan suficiente o efectiva debe resultar la misma. No obstante, no podemos dejar de señalar que, del primer informe de 204 páginas[13], solo 4 páginas listan de forma muy general lo que se consideraron gestiones[14]. Las restantes 200 páginas, definitivamente no pueden ser consideradas como gestiones dirigidas al objetivo de la Ley Núm.167-2020, *supra*. Repasemos cómo fueron definidos los 12 capítulos del primer informe: Carta al Lector del Pueblo que Represento; ¿Quién Soy?; Introducción - Con la verdad todo, sin la verdad nada; La Delegación/Pan y Circo -Sin Pie Ni Cabeza (Primera Parte); Juramentación – "…contra todo enemigo interior y exterior…"; Lista para la Batalla –"La Estadidad Desde La Calle"; La Delegación/Pan y Circo -Ni reglamento interno ni plan en conjunto (Segunda Parte); La Delegación/Pan y Circo -Cada uno por su lado. (Tercera Parte); La Delegación/Pan y Circo –¿Dónde está estancada la Estadidad? (Cuarta Parte); La Delegación/Pan y Circo -¿Partido o causa? (Quinta Parte); La Estadidad: Una Formula Huérfana -Cronología de la improvisación y la inobservancia (Sexta Parte); Ausencia de

---

[13] Véase, Índice del Apéndice, págs. 295 a la 498.
[14] La responsabilidad de radicar los informes comenzó a partir del 1 de julio de 2021, fecha en que juramentó la señora Elizabeth Torres Rodríguez. En cuanto a listado de gestiones a partir de esa fecha, véase, Índice de Apéndice páginas 399, 400, 401 y 432.

Realismo Político -El vaivén de los Congresistas.   El contenido de la mayoría de los capítulos antes mencionados, resultan ser un catálogo de críticas, recortes de periódicos, e interpretaciones sociales y legales y de rechazo al Plebiscito del 2020, por parte de la señora Torres Rodríguez.

Este primer informe concluye con una carta al Gobernador, y entre críticas, la señora Torres Rodríguez le pidió que extinguiera la delegación y citamos "...No existe en la ley nada que justifique nuestra existencia ni el gasto que, mantenerla por tres años, conlleva"[15].   Igualmente le mencionó que "mantener viva la delegación es un acto de traición al pueblo".

Visto lo anterior, resultan cuestionables las "gestiones" como unas *bona fide* y en cumplimiento con la Ley Núm. 167-2020, *supra,* cuando una de las Delegadas desea la disolución de la delegación y la tilda como un "embeleco".

En cuanto al Segundo Informe, el foro primario concluyó que este también cumplió con el texto del Artículo 12 de la Ley Núm. 167-2020, *supra.* Sin embargo, aclaró que "[n]o nos corresponde determinar el *quantum* requerido para establecer qué gestiones son legítimas o suficientes ni surge de la Ley que, además de incluir las gestiones llevadas [a] cabo, *se demuestre o se justifiquen dichas gestiones como unas válidas para lograr los objetivos de la Ley"[16].*

Este segundo informe, nos merece las mismas observaciones que realizamos al anterior.  Este consta de 104 páginas[17], y solo 7 páginas listan de forma muy general gestiones que fueron realizadas entre el 22 de septiembre al 28 de diciembre.  Resaltamos que, a diferencia del listado del primer informe, este segundo informe no detalla fechas específicas, ni horas. Aquí los capítulos, son una

---

[15] Véase Índice del Apéndice pág. 498.
[16] Véase Índice del Apéndice, Anejo VI, pág. 29.
[17] El informe indica como fechas: Septiembre - Diciembre 2021

secuela de críticas del primer informe, que en nada adelantan los objetivos de la Ley Núm. 167-2020, *supra*. Los capítulos fueron titulados: Introducción -La gallinita de los huevos de oro; Primera Parte-La mafia PNP y el monopolio de la estadidad: Persecución y censura -Operativo "Silencien a esa mujer"; Segunda Parte: La mafia PNP y el monopolio de la estadidad: Persecución y censura - Operativo "Presionemos para que renuncie"; Tercera Parte: La mafia PNP y el monopolio de la estadidad: Persecución y censura -El Gobernador y la doble vara para los delegados de su "plancha"; Cuarta Parte: ¿Por qué no renuncio?; Quinta Parte: Detalles de la Ley 167 que todo ciudadano debe conocer-Renuncias, funciones, sueldos, horarios y obligaciones; Sexta Parte: Resumen de Hallazgos previos: El engaño PNP ¡Infórmate estadista!; Séptima Parte: Mis gestiones como delegada -Mi compromiso con la estadidad supera al partido; Octava Parte: Actualización y nuevos hallazgos -La estadidad en manos del PNP jamás llegará.

El segundo informe, igualmente concluye con una carta al Gobernador, y entre críticas y denuncias, reitera que la delegación congresional es un "embeleco".

Por último, en cuanto al Tercer Informe (video), tras analizarlo en varias ocasiones, el foro primario concluyó que "este no incluye ninguna gestión que llevó a cabo la [señora Torres Rodríguez] para cumplir con el mandato de la Ley". A tales efectos, consignó lo siguiente:

> [...] Nos parece importante expresar que esta determinación no se basa en las críticas que contiene el Tercer Informe sobre la Ley o sobre la labor de los demás delegados o cualquier otra. La Ley Núm. 167 no establece nada sobre las críticas, solo dispone que los informes que los delegados deben presentar al Gobernador cada 90 días deben incluir las gestiones que han llevado a cabo para cumplir con el propósito de la ley. El Tercer Informe presentado por la Señora Torres Rodríguez no cumple con el requerimiento de la ley. No podemos tomar como gestiones llevadas a cabo, las críticas hacia el Partido Nuevo Progresista, el Gobierno de Puerto Rico y diversos funcionarios, así

como al resto de los Delegados Especiales, cuando dichas críticas se llevan a cabo en el Informe que debe contener las gestiones realizadas. A tenor con lo dispuesto en la Ley 167, una crítica *por sí* sola, no puede ser considerada como una gestión, a menos que dicha crítica sea parte de una acción o trámite para cumplir con el llamado de la Ley y así se establezca en el Informe que mandata la Ley.

Como hemos advertido anteriormente, la [señora Torres Rodríguez], en su informe, **no incluyó las gestiones que llevó a cabo para cumplir con el propósito de la ley.** Tan es así, que esta, al final del vídeo, informa que, en un futuro estaría sometiendo otro informe con las gestiones que realizó desde octubre de 2021 hasta diciembre de 2021. A pesar de eso, tal informe no se le ha presentado a este Tribunal. Este Tribunal le dio espacio a la Señora Torres Rodríguez para que analizara la prueba presentada por el Gobierno para constatar que se trataba del Informe correcto y estos no lo cuestionaron. Por lo tanto, debemos concluir que el Tercer Informe no cumple con los requerimientos que establece el Artículo 12 de la Ley para crear la Delegación Congresional de Puerto Rico, Ley Núm. 167.

Así, pues, contrario a los argumentos de la señora Torres Rodríguez, la determinación del foro primario al destituirla no estuvo basada en la inconformidad del foro primario con el contenido del tercer informe. Por el contrario, el foro primario fue meridianamente claro en que la "determinación no se basa en las críticas que contiene el Tercer Informe sobre la Ley o sobre la labor de los demás delegados o cualquier otra" y reconoció que "[l]a Ley Núm. 167 no establece nada sobre las críticas, solo dispone que los informes que los delegados deben presentar al Gobernador cada 90 días deben incluir las gestiones que han llevado a cabo para cumplir con el propósito de la ley".[18] De hecho, los primeros dos informes igualmente contienen críticas, pero aun así el foro apelado concluyó que estos cumplían con el texto de la Ley 167-2020, pues incluían algunas gestiones que la parte apelante llevó a cabo. Por ende, a pesar de que los *tres* informes contienen críticas, la diferencia estriba en que en el Tercer Informe la parte apelante simplemente **no incluyó ninguna gestión** que llevó a cabo para cumplir con el

---

[18] Véase Índice del Apéndice, Anejo VI, pág. 29.

propósito de la ley durante el periodo cubierto por este. Por ende, el error señalado no fue cometido.

Por último, la señora Torres Rodríguez argumenta que el foro primario erró al omitir analizar el efecto del proceso sumario, en los intereses de los votantes que eligieron a la apelante mediante el voto directo. Ese argumento es uno totalmente impertinente y su discusión fue muy escueta. Reiteramos que ante nosotros está la evaluación de la procedencia o no de la sentencia dictada sumariamente.

## VI.

En resumen, un examen de *novo* de los escritos mediante los cuales se solicita la Sentencia Sumaria y su correspondiente oposición, así como la evidencia que los apoyan, nos llevan a confirmar al foro primario y a validar la destitución en controversia. Lo anterior, por incumplir con el Art. 12 de la Ley Núm. 167, supra.

Cabe reiterar que, en el recurso de *Apelación* ante nos, la señora Torres Rodríguez nunca cuestionó la prueba del expediente que apoyaba las determinaciones de hechos formuladas por el foro primario, y mucho menos las controvirtió. Igualmente, concluimos que en la *Apelación,* la señora Torres Rodríguez tampoco esbozó planteamiento alguno a los efectos de que existen controversias de hechos que impedían que el foro apelado dictara sentencia sumaria a favor del Gobierno.

## VII.

Por los fundamentos que anteceden, se confirma la Sentencia dictada el 26 de junio de 2023, por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones. La Juez Lebrón Nieves concurre sin escrito. El Juez Rivera Colón concurre con la siguiente expresión:

Concurro. Modificaría a los fines de discutir con detalle, el incumplimiento craso de los Informes 1 y 2 según lo establecido en el Artículo 12 de la Ley Núm. 167 de 30 de noviembre de 2020 y así modificada confirmaría.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones